RENDERED: MARCH 31, 2023; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0603-MR

CHARLIE KIRBY; ADAM YORK;
DONNA RUSSELL; EDWARD
RUGGLES; EDWARD RUGGLES,
JR.; LEE RUGGLES; AND NANCY
HURST                                                                APPELLANTS

|  | APPEAL FROM FAYETTE CIRCUIT COURT |
|---|---|
| v. | HONORABLE JULIE M. GOODMAN, JUDGE |
|  | ACTION NO. 20-CI-02869 |

KEENELAND ASSOCIATION, INC.;
KRM WAGERING, LLC;
LEXINGTON TROTS BREEDERS
ASSOCIATION, LLC; AND RED
MILE, INC.                                                               APPELLEES

## OPINION
## AFFIRMING

** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; COMBS AND JONES, JUDGES.

COMBS, JUDGE: Charlie Kirby, Adam York, Nancy Hurst, Edward Ruggles,

Edward Ruggles, Jr., Lee Ruggles, and Donna Russell (Appellants, referred to

collectively as the Wagerers) appeal the order of the Fayette Circuit Court dismissing their lawsuit against Keeneland Association, Inc.; Lexington Trots Breeders Association, LLC; Red Mile, Inc.; and KRM Wagering, LLC (the Appellees). By means of their civil action, the Wagerers sought to recover their own gambling losses (as well as the gambling losses of numerous unidentified fellow wagerers) incurred as a result of bets placed at electronic terminals displaying historical horse races. The circuit court concluded that the complaint against the Wagerers failed to state a claim upon which relief could be granted. After our review, we affirm.

The issues underlying this case have undergone a long and somewhat contradictory journey through our courts for more than a decade. For the sake of historical perspective, we shall recount the salient events in that odyssey.

In July 2010, the Kentucky Horse Racing Commission (the Racing Commission) promulgated administrative regulations authorizing wagers on historical horse races at electronic terminals. On the day that the new regulations were adopted, the Racing Commission, the Kentucky Department of Revenue, and several racing associations filed a petition for declaration of rights in the Franklin Circuit Court. The petitioners sought a declaration that the Racing Commission's new regulations were a lawful exercise of its statutory authority; that pari-mutuel wagering on historical horse races pursuant to the new administrative regulations

did not violate the gambling prohibitions of KRS[1] Chapter 528; and that the Department of Revenue lawfully exercised its statutory authority in requiring that excise tax be paid on the revenue generated from wagering on historical horse races. Although no respondent or opposing party was named in the petition, the circuit court, *sua sponte*, determined that the case presented a justiciable controversy over which it could -- and did -- exercise jurisdiction.

Later, the Family Trust Foundation of Kentucky, Inc., (the Family Trust Foundation) sought and received permission to intervene in the action. It contended that a justiciable controversy had **not** been presented to the court. Alternatively, it argued that wagering on historical horse races was not pari-mutuel wagering as permitted under Kentucky law and that the newly promulgated administrative regulations of the Racing Commission were invalid. However, the circuit court denied the request of the Family Trust Foundation to conduct discovery.

The circuit court entered judgment declaring: that the administrative regulations of the Racing Commission were valid; that the Department of Revenue's collection of excise taxes on historical horse racing wagering was valid; and that the licensed operation of historical horse racing terminals pursuant to the Racing Commission's new regulations did not violate Kentucky's prohibition on

---

[1] Kentucky Revised Statutes.

gambling as contained in KRS Chapter 528. The Racing Commission duly licensed the wagering, and, in short order, wagers were being placed on historical horse races at Kentucky racetracks.

The Family Trust Foundation appealed the judgment of the Franklin Circuit Court. In a divided opinion, this Court concluded that the case indeed presented a justiciable controversy. However, we determined that the trial court had abused its discretion by failing to permit the Family Trust Foundation to develop proof and to present evidence to establish that the contested wagers did not constitute pari-mutuel wagering -- thus negating the regulations promulgated by the Racing Commission. Consequently, we vacated the judgment and remanded for further proceedings.

After granting discretionary review, the Kentucky Supreme Court determined that the circuit court had also erred by concluding that the petition for declaratory judgment presented a justiciable controversy. *Appalachian Racing LLC v. Family Trust Foundation of Kentucky, Inc.*, 423 S.W.3d 726 (Ky. 2014). However, it held that participation by the Family Trust Foundation before the appellate courts had cured that constitutional infirmity. The court rejected the contention of the Family Trust Foundation that the Racing Commission acted outside the scope of its authority. It held specifically that the promulgation of administrative regulations by the Racing Commission to license the operation of

-4-

pari-mutuel wagering on historical horse racing was a valid and lawful exercise of the agency's authority under its enabling statute. Nonetheless, it concluded that additional proceedings in the trial court were required in order to determine whether the wagering envisioned by the various horse racing associations constituted an actual pari-mutuel form of wagering; *i.e.*, the only form of wagering authorized by the provisions of KRS Chapter 230.

On remand, discovery commenced on this narrow issue. In January 2018, the Franklin Circuit Court conducted a bench trial. The circuit court concluded that the method of wagering on historical horse races (referred to as either the "Encore system" or the "Exacta system") permitted at Kentucky racetracks did indeed constitute a pari-mutuel system of wagering meeting the requirements of the Racing Commission's regulations. Again, the Family Trust Foundation appealed.

On transfer from this Court, the Supreme Court of Kentucky held that the trial court erred by concluding that wagering using the Encore platform constituted a pari-mutuel form of wagering meeting the requirements of the Racing Commission's regulations. *Family Trust Foundation of Kentucky, Inc. v. Kentucky Horse Racing Comm'n*, 620 S.W.3d 595 (Ky. 2020). It reiterated that "pari-mutuel wagering requires that patrons generate the pools based on wagering on the same discrete, finite events." *Id.* at 601. It observed as follows:

> Without providing simultaneous access to one historical horse race to the same group of patrons, no pari-mutuel pool can be created among the patrons in which they are wagering among themselves, setting the odds and the payout.

*Id.* Additionally, the Supreme Court concluded that the funding of the "initial seed pool" by a racing association removed the wagering from a pari-mutuel form of wagering. It held that random generation of multiple historical horse races with patrons placing wagers on different races or sets of races does not qualify as pari-mutuel wagering and reversed the judgment of the Franklin Circuit Court.

On February 2, 2021, the General Assembly reacted to the holding of the Supreme Court of Kentucky and unequivocally stated its legislative intent as being contrary to the interpretations of the high court. Senate Bill 120 adopted a definition of pari-mutuel wagering that included the pooling of wagers on different events and authorizing contributions from racing associations to fund gaming seed pools.[2] The bill passed the Senate without amendment, and two days later, it passed the House without amendment. On February 22, 2021, Governor Beshear signed the bill into law. Codified at KRS 230.210(15), the law provides as follows:

> "Pari-mutuel wagering," "pari-mutuel system of wagering," or "mutuel wagering" each means any method of wagering previously or hereafter approved by the racing commission in which one (1) or more patrons

---

[2] 2021 Ky. Laws 8, § 1 (S.B. 120) (eff. Feb. 22, 2021).

wager on a horse race or races, whether live, simulcast, or previously run. Wagers shall be placed in one (1) or more wagering pools, and wagers on different races or sets of races may be pooled together. Patrons may establish odds or payouts, and winning patrons share in amounts wagered including any carryover amounts, plus any amounts provided by an association less any deductions required, as approved by the racing commission and permitted by law. Pools may be paid out incrementally over time as approved by the racing commission . . . .

The Racing Commission accordingly promulgated new regulations incorporating and implementing the new legislation's definition of pari-mutuel wagering contained in the new legislation.

On March 17, 2021, on remand from the Kentucky Supreme Court, the Franklin Circuit Court entered its final judgment. It held that historical horse race wagering using the Exacta platform was "not a form of pari-mutuel wagering under the laws in effect at the time of the Kentucky Supreme Court's September 24, 2020, opinion." **The Franklin Circuit Court denied the motion filed by the Family Trust Foundation to give its judgment retroactive application**.

The Wagerers filed the action underlying this appeal in Fayette Circuit Court. Contending that wagers placed at electronic terminals displaying historical horse races before the enactment of Senate Bill 120 did not qualify as pari-mutuel wagering as a matter of law, they argued that the wagers constituted illegal gambling. Relying upon the provisions of Kentucky's Loss Recovery Act, KRS

Chapter 372, they sought to recover their lost wagers -- plus lost wagers made by every other individual at one of the electronic terminals operating at Kentucky racetracks.

The statutes now comprising KRS 372.010 to 372.050 are nearly verbatim reenactments of provisions contained within the legislature's *first* codification of the Commonwealth of Kentucky's statutes and are derived from the days of our Virginia heritage and parentage. *See Commonwealth ex rel. Brown v. Stars Interactive Holdings (IOM) Ltd.*, 617 S.W.3d 792 (Ky. 2020). KRS 372.020 enables a losing gambler to file a first-party cause of action in order to recover his gambling losses. It provides as follows:

> If any person loses to another at one (1) time, or within twenty-four (24) hours, five dollars ($5) or more, or anything of that value, and pays, transfers or delivers it, the loser or any of his creditors may recover it, or its value, from the winner, or any transferee of the winner, having notice of the consideration, by action brought within five (5) years after the payment, transfer or delivery. Recovery may be had against the winner, although the payment, transfer or delivery was made to the endorsee, assignee, or transferee of the winner. If the conveyance or transfer was of real estate, or the right thereto, in violation of KRS 372.010, the heirs of the loser may recover it back by action brought within two (2) years after his death, unless it has passed to a purchaser in good faith for valuable consideration without notice.

KRS 372.020. Where a losing gambler fails to bring a recovery action under the provisions of KRS 372.020 within six months, KRS 372.040 permits a third-party

-8-

cause of action to be brought against the winning gambler by any other person and allows for the recovery of treble damages.

After the Wagerers filed their second amended complaint in January 2022, and before they filed an answer, the defendant racing associations and KRM Wagering, LLC, filed a motion to dismiss. Following a hearing, the court concluded that the Wagerers were not entitled to relief under the provisions of Kentucky's Loss Recovery Act. It relied upon the safe-harbor provision of KRS 372.005, which expressly provides that "[t]he terms and provisions of this chapter do not apply to betting, gaming, or wagering that has been authorized, permitted, or legalized . . . ." The court concluded that the plain language of this provision means that no cause of action will lie where the challenged wagering was authorized, permitted, or legalized (retroactively or otherwise). By its order entered on April 27, 2022, the trial court granted the motion and dismissed the complaint. This appeal followed.

On appeal, the Wagerers argue that the Fayette Circuit Court erred by granting the motion to dismiss. They contend that the trial court erroneously concluded that the provisions of the Loss Recovery Act are inapplicable by its terms.

A motion to dismiss for failure to state a claim upon which relief may be granted presents a question of law. Therefore, we do not defer to the trial

court's determination. *Fox v. Grayson*, 317 S.W.3d 1 (Ky. 2010). Instead, we must review the issue *de novo. Id.*

Where a statute is clear and unambiguous, it must be applied as written. *Stephenson v. Woodward*, 182 S.W.3d 162 (Ky. 2005). In analyzing whether the Wagerers' complaint states a claim upon which relief may be given, we must apply the language of the safe-harbor provision of Kentucky's Loss Recovery Act according to its plain and ordinary meaning.

The Wagerers contend that they did not fail to state a claim upon which relief may be granted because operation of electronic terminals that did not employ a pari-mutuel form of wagering were rendered *illegal* at all points in time by the 2020 decision of the Kentucky Supreme Court in *Family Trust Foundation of Kentucky, Inc.*, *supra*. Additionally, in an effort to circumvent the safe-harbor provision of KRS 372.005, they argue that operation of the terminals was never properly "authorized" or "permitted" because the administrative regulations of the Racing Commission were void *ab initio*.

Contrary to the Wagerers' representations, the disputed administrative regulations of the Racing Commission were never declared void *ab initio*. In 2010, the Franklin Circuit Court declared that the administrative regulations of the Racing Commission were valid and that the licensed operation of historical horse racing terminals pursuant to the Racing Commission's regulations did not violate

the prohibition on gambling as contained in KRS Chapter 528. Thereafter, *and pursuant to its administrative regulations*, the Racing Commission licensed the operation of wagering on historical horse races at electronic terminals situated at Kentucky racetracks. In its 2014 decision, the Supreme Court of Kentucky concluded unequivocally that "the regulations promulgated by the Commission for the licensing of historical horse race wagering are consistent with the statutory mandate for 'pari-mutuel wagering' on 'legitimate horse racing. . . .'" *Appalachian Racing*, 423 S.W.3d at 738. It held specifically that the Racing Commission "did not exceed the scope of its authority, and the regulations are therefore not invalid." *Id.* From the outset, the challenged wagering was plainly "authorized" or "permitted" -- as those terms are commonly understood.

In October 2018, the Franklin Circuit Court concluded that the method of wagering on historical horse races being offered at Kentucky racetracks constituted a pari-mutuel system of wagering that met the requirements of the Racing Commission's administrative regulations. In its 2020 decision reviewing that determination, the Supreme Court of Kentucky did not retreat from its initial conclusion that the administrative regulations of the Racing Commission were valid. Instead, it concluded that the trial court had misapplied the regulations as a matter of law.

The Racing Commission licensed the challenged wagering placed on historical horse races at Kentucky racetracks. The wagers were both "authorized" and "permitted" before they were placed. Moreover, they were eventually legalized by the General Assembly. As a result, the losses incurred by the Wagerers are not compensable under either the first-party or third-party provisions of Kentucky's Loss Recovery Act. Because the Act does not provide the Wagerers with a cause of action, the trial court did not err by dismissing the complaint.

Finally, in the conclusion portion of their brief, the Wagerers mention that the trial court's dismissal of their additional claims -- based on the common law doctrine of unjust enrichment and the provisions of our Consumer Protection Act -- must also be reversed. However, no arguments with respect to these issues of law were presented to us. Consequently, we decline to consider them. *Grief v. Wood*, 378 S.W.2d 611, 612 (Ky. 1964) ("Other matters suggested in appellants' brief [that] are unsupported by argument or by citation of authority . . . present nothing for consideration.").

We affirm the order of the Fayette Circuit Court.


ALL CONCUR.

BRIEFS FOR APPELLANTS:

Robert L. Roark
Tyler Z. Korus
Lexington, Kentucky

BRIEF FOR APPELLEES:

Steven B. Loy
Anthony Phelps
Lexington, Kentucky

Kathryn S. Beck
Louisville, Kentucky

Robert E. Maclin, III
Preston W. Worley
Brittany Deskins
Lexington, Kentucky

*AMICUS CURIAE* BRIEF FOR
CHURCHILL DOWNS, INC.:

Bethany A. Breetz
Philip W. Collier
Chadwick A. McTighe
Jeffrey S. Mood
Louisville, Kentucky